IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-141

 No. 366A20

 Filed 5 November 2021

 IN THE MATTER OF: N.C.E. and N.D.C.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 29 April

 2020 by Judge Meader W. Harriss III in District Court, Pasquotank County. This

 matter was calendared for argument in the Supreme Court on 30 September 2021

 but determined on the record and briefs without oral argument pursuant to Rule 30(f)

 of the North Carolina Rules of Appellate Procedure.

 Frank P. Hiner IV for petitioner-appellee Pasquotank County Department of
 Social Services.

 Chelsea K. Barnes for appellee Guardian ad Litem.

 Robert W. Ewing for respondent-appellant mother.

 HUDSON, Justice.

¶1 Respondent-mother appeals from the trial court’s orders terminating her

 parental rights to N.C.E. (Nathan) and N.D.C. (Nick).1 Because we hold the trial court

 did not abuse its discretion by concluding that it was in Nathan’s and Nick’s best

 interests to terminate respondent-mother’s parental rights, we affirm the trial court’s

 orders.

 1 Pseudonyms are used to protect the identity of the juveniles.
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 I. Factual and Procedural Background

¶2 During a thunderstorm on the evening of 18 August 2018, respondent-mother

 left then twenty-month-old Nathan on the front porch of the maternal grandmother’s

 temporary residence. After leaving, respondent-mother called the maternal

 grandmother to let her know that Nathan was on the porch and that respondent-

 mother would be back to pick him up in the morning. The maternal grandmother

 reported this incident to the Elizabeth City Police Department.

¶3 A law enforcement officer and a social worker with the Pasquotank County

 Department of Social Services (DSS) responded to the maternal grandmother’s

 residence. The maternal grandmother was unable to provide respondent-mother’s

 location or the location of Nathan’s younger brother, Nick, and respondent-mother

 did not respond to attempts to contact her. The social worker initiated a Child

 Protective Services investigation and determined that neither the maternal

 grandmother nor the children’s maternal aunt (with whom the maternal

 grandmother was residing) were willing or able to provide care for Nathan on an

 ongoing basis.

¶4 On 20 August 2018, after learning that DSS had opened an investigation,

 Nick’s purported paternal grandmother brought him to DSS. The purported paternal

 grandmother stated that she often cared for Nick. The next day, respondent-mother

 and Nick’s purported paternal grandmother reported to DSS along with several other
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 parties. A domestic incident occurred at the agency which resulted in a law

 enforcement officer taking respondent-mother into custody, whereupon she requested

 that DSS take custody of Nathan and Nick.

¶5 On 22 August 2018, DSS filed separate juvenile petitions in District Court,

 Pasquotank County, alleging that Nathan and Nick were neglected and dependent

 juveniles. On 17 October 2018, the trial court entered an adjudication order

 concluding that Nathan and Nick were neglected and dependent juveniles. See

 N.C.G.S. § 7B-101(9), (15) (2019). In a disposition order entered the same day, the

 trial court ordered that respondent-mother participate in a Parenting Capacity

 Evaluation and follow all recommendations, participate in outpatient mental health

 counseling/therapy addressing anger management and parenting education, secure

 employment and stable independent housing, keep all scheduled visitations with her

 children, maintain weekly contact with DSS regarding her whereabouts, and meet

 with a social worker monthly. The trial court allowed respondent-mother two hours

 of weekly supervised visitation with the children. The trial court granted DSS custody

 and placement authority over the children and ordered DSS to place the children in

 a licensed foster home or other court-approved placement.

¶6 On 18 December 2018, the matter came on for a ninety-day review hearing. In

 the resulting order entered on 30 January 2019, the trial court ordered that DSS

 continue to provide for and arrange placement of the children in a licensed foster
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 home or any other home approved by the court.

¶7 On 24 May 2019, the trial court entered a permanency-planning order. The

 trial court set the permanent plan for the children as reunification with a concurrent

 plan of custody with a relative or court-approved caretaker. The trial court also

 ordered that if respondent-mother “ha[d] not done the items ordered [by the next

 review hearing], [DSS] shall recommend changing the permanent plan to adoption.”

 The matter came on for review on 27 August 2019. In its 10 October 2019

 permanency-planning order, the trial court set the permanent plan for the children

 as adoption and the concurrent plan as reunification. The trial court ordered DSS to

 file a petition to terminate respondent-mother’s parental rights.

¶8 On 3 December 2019, DSS filed separate petitions for termination of

 respondent-mother’s parental rights in Nathan and Nick. With respect to each child,

 DSS alleged that respondent-mother had neglected the children within the meaning

 of N.C.G.S. § 7B-1111(a)(1); willfully left the children in foster care or placement

 outside the home for more than twelve months without showing to the satisfaction of

 the court that reasonable progress under the circumstances had been made in

 correcting those conditions which led to the children’s removal within the meaning of

 N.C.G.S. § 7B-1111(a)(2); and for a continuous period of six months next preceding

 the filing of the petition to terminate her parental rights, willfully failed to pay a

 reasonable portion of the children’s cost of care in DSS custody although physically
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 and financially able to do so within the meaning of N.C.G.S. § 7B-1111(a)(3).

¶9 On 11 March 2020, the trial court conducted an adjudication hearing on DSS’s

 petitions to terminate respondent-mother’s parental rights in Nathan and Nick. On

 29 April 2020, the trial court entered orders adjudicating grounds for termination of

 respondent-mother’s parental rights and concluded that as alleged by DSS, grounds

 existed under N.C.G.S. § 7B-1111(a)(1), (2), and (3).

¶ 10 On 23 March 2020, the trial court conducted a disposition hearing. It concluded

 that termination of respondent-mother’s parental rights was in the best interests of

 Nathan and Nick. Accordingly, in orders entered 29 April 2020, the trial court

 terminated respondent-mother’s parental rights in both children. Respondent-

 mother appeals.

 II. Analysis

¶ 11 Respondent-mother does not contest the trial court’s adjudication of grounds

 to terminate her parental rights under N.C.G.S. § 7B-1111(a)(1)–(3). She confines her

 appeal to challenging the trial court’s dispositional determination under N.C.G.S. §

 7B-1110(a), that it was in the children’s best interests to terminate her parental

 rights.

¶ 12 At the disposition stage of a termination-of-parental-rights proceeding, the

 trial court must “determine whether terminating the parent’s rights is in the
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 juvenile’s best interest[s].” N.C.G.S. § 7B-1110(a) (2019). In making its

 determination,

 [t]he court may consider any evidence, including hearsay
 evidence as defined in G.S. 8C-1, Rule 801, that the court
 finds to be relevant, reliable, and necessary to determine
 the best interests of the juvenile. In each case, the court
 shall consider the following criteria and make written
 findings regarding the following that are relevant:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will aid in
 the accomplishment of the permanent plan for the juvenile.

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the juvenile and
 the proposed adoptive parent, guardian, custodian, or other
 permanent placement.

 (6) Any relevant consideration.

 Id. “Although the trial court must consider each of the factors in N.C.G.S. § 7B-

 1110(a), written findings of fact are required only ‘if there is conflicting evidence

 concerning the factor, such that it is placed in issue by virtue of the evidence

 presented before the district court.’ ” In re G.G.M., 377 N.C. 29, 2021-NCSC-25, ¶ 22

 (quoting In re A.R.A., 373 N.C. 190, 199 (2019)).

¶ 13 “The trial court’s dispositional findings of fact are reviewed under a ‘competent

 evidence’ standard.” In re A.J.T., 374 N.C. 504, 508 (2020) (quoting In re K.N.K., 374
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 N.C. 50, 57 (2020)). “We are likewise bound by all uncontested dispositional findings.”

 In re E.F., 375 N.C. 88, 91 (2020) (citing In re Z.L.W., 372 N.C. 432, 437 (2019)). We

 review a trial court’s assessment of a juvenile’s best interests only for abuse of

 discretion. In re A.R.A., 373 N.C. at 199. “Under this standard, we defer to the trial

 court’s decision unless it is ‘manifestly unsupported by reason or one so arbitrary that

 it could not have been the result of a reasoned decision.’ ” In re J.J.B., 374 N.C. 787,

 791 (2020) (quoting In re Z.A.M., 374 N.C. 88, 100 (2020)).

¶ 14 As an initial matter, we note the trial court entered separate disposition orders

 for Nathan and Nick, with substantially similar, if not identical, findings of fact. In

 addressing respondent-mother’s challenges to specific findings of fact, we will quote

 from the “Disposition Order for Termination of Parental Rights” in Nathan’s case.

¶ 15 In both of its disposition orders, the trial court made findings of fact correlating

 to each of the statutory criteria in N.C.G.S. § 7B-1110(a)(1)–(5). Addressing N.C.G.S.

 § 7B-1110(a)(1) and (2), the trial court noted Nathan’s and Nick’s ages and found the

 likelihood of their adoption “extremely high” due to their ages, health, and

 personalities. Addressing N.C.G.S. § 7B-1110(a)(3), the trial court found that

 termination of parental rights was necessary to accomplish the permanent plan of

 adoption. Addressing N.C.G.S. § 7B-1110(a)(4), the trial court found that “no bond”

 existed between respondent-mother and either child. Addressing N.C.G.S. § 7B-

 1110(a)(5), the trial court found that because neither child was in an adoptive
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 placement, “there [was] no information on the quality of the relationship between [the

 children] and the proposed adoptive parent[s].” As respondent-mother does not

 challenge these findings, they are binding on appeal. See In re E.F., 375 N.C. at 91.

 A. Sufficiency of findings under N.C.G.S. § 7B-1110(a)(5)

¶ 16 Respondent-mother first argues that the trial court failed to make additional

 findings of fact required by N.C.G.S. § 7B-1110(a)(5) to address the quality of the

 relationship between the children and the permanent placements proposed by

 respondent-mother, specifically the children’s maternal grandmother and maternal

 great-grandparents.

¶ 17 Although respondent-mother did not attend the disposition hearing, the

 transcript and the trial court’s findings show that the maternal grandmother testified

 and offered herself as a permanent placement for the children. However, the record

 provides no indication that the maternal great-grandparents were proposed as a

 placement option during the termination proceedings. Moreover, while the maternal

 grandmother sought to be considered as a permanent placement, a review of the

 record reveals no conflict in the evidence regarding the quality of her relationship

 with Nathan or Nick. Therefore, the trial court did not err by failing to make written

 findings on this issue under N.C.G.S. § 7B-1110(a)(5). See In re A.R.A., 373 N.C. at

 199.
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 B. Accuracy of findings under N.C.G.S. § 7B-1110(a)(6)

¶ 18 Respondent-mother next argues that “the trial court’s findings of fact which

 held the maternal great-grandparents and maternal grandmother were not

 appropriate placement providers for the children were not supported by . . . competent

 evidence.” She further contends that “[t]he competent evidence supports a finding

 that the children’s placement with the maternal great grandparents and the

 maternal grandmother [is] appropriate.”

¶ 19 Although the availability of a relative placement is not among the specific

 dispositional factors set forth in N.C.G.S. § 7B-1110(a)(1)–(5), we have held the trial

 court “may treat the availability of a relative placement as a ‘relevant consideration’ ”

 under N.C.G.S. § 7B-1110(a)(6). In re S.D.C., 373 N.C. 285, 290 (2020). “[T]he extent

 to which it is appropriate to do so in any particular proceeding [is] dependent upon

 the extent to which the record contains evidence tending to show whether such a

 relative placement is, in fact, available.” Id.

¶ 20 Here, respondent-mother challenges the following findings as unsupported by

 the evidence: the trial court had previously denied respondent-mother’s request to

 place the children with the maternal great-grandparents at the ninety-day review

 hearing on 18 December 2018; the maternal grandmother believed respondent-

 mother was a “good mother” and blamed others for the children being in DSS custody;
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 and the trial court received “scant evidence” about the quality of care the children

 would receive if placed with their maternal relatives.

¶ 21 With regard to the finding that the trial court had declined to place the children

 with the maternal great-grandparents at the ninety-day review hearing, DSS Social

 Worker Dale Corbin testified during the termination hearing about the assessment

 conducted with the maternal great-grandparents as a potential placement option. At

 the time of the initial kinship assessment on 29 August 2018, the maternal great-

 grandparents’ 48-year-old son, who has a “criminal background,” was living in the

 home. DSS’s concerns are also reflected in the trial court’s findings in the 30 January

 2019 ninety-day review order.2 The maternal great-grandparents made the following

 disclosures to Social Worker Corbin at a meeting on 29 November 2018:

 [The maternal great-grandmother] stated they could not
 have the children placed in their home as neither she nor
 her husband were capable of caring for the children, given
 [Nathan] being a very active child and needing to be
 watched constantly. [The maternal great-grandparents]
 advised they know what would happen if the children were
 placed with them citing that neither [respondent-mother]
 nor their maternal grandmother . . . would do anything.
 [The maternal great-grandmother] stated that neither [the
 maternal grandmother] nor [respondent-mother] “want the
 children” and were not going to do what they are supposed
 to do to get the children back. . . . Further, [the maternal
 great-grandmother] advised the children would just be left
 with them and they could not care for them full time. [She]
 stated she feels better knowing the children are currently

 2 The trial court took judicial notice of all orders entered in the underlying juvenile

 proceedings.
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 being cared for and are safe where they were.

 The trial court also found that the maternal great-grandmother had contacted Social

 Worker Corbin on 3 December 2018 in an attempt to disavow these statements,

 explaining that respondent-mother and the maternal grandmother “were very upset

 and angry with her and [the maternal great-grandfather] for telling Social Worker

 Corbin that they could not care for the children” and claiming that “she and her

 husband wanted the children brought to her home to stay.” However, Social Worker

 Corbin believed the maternal great-grandparents had been “upfront, honest and not

 hesitant in advising of their situation” on 29 November 2018.

¶ 22 Although the ninety-day review order did not expressly reject the maternal

 great-grandparents’ request to serve as a placement for Nathan and Nick, the order

 maintained the children in DSS custody and directed DSS to continue to arrange for

 their placement “in a licensed foster home or . . . any other home or facility approved

 by the Court.” Given the order’s findings and Social Worker Corbin’s testimony at the

 disposition hearing, one could reasonably infer that the trial court had deliberately

 chosen not to place the children with the maternal great-grandparents at the prior

 hearing in December 2018. We further conclude that any error in this dispositional

 finding is harmless, inasmuch as the maternal great-grandparents were not proposed

 as a placement option for the children at the time of the termination hearing. See In

 re E.F., 375 N.C. at 94.
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

¶ 23 The trial court’s findings that the maternal grandmother believed respondent-

 mother to be a “good mother” and assigned blame “to everyone except her daughter”

 are fully supported by the maternal grandmother’s testimony at the disposition

 hearing. Respondent-mother argues the trial court’s findings misconstrue this

 testimony, noting the maternal grandmother’s qualification that she did not agree

 with the way respondent-mother had been “handling things” and that respondent-

 mother is a good mother in “some aspects.” However, the transcript reflects the

 maternal grandmother testified that “[w]hen I say she’s a good mother, she loves her

 children. She—she was never abusive to them or, you know, anything that would rule

 you out as a good mother. She just was a good mother in general.”

¶ 24 As for the maternal grandmother assigning blame to people other than

 respondent-mother for the children remaining in DSS custody, the maternal

 grandmother testified that the children’s relatives had asked DSS to be a kinship

 placement for the children but were refused “because of little things . . . little stuff”

 despite her assurance to Social Worker Corbin that “whatever h[e] and DSS needed

 us to do we would do it.” The maternal grandmother repeatedly expressed her

 frustration that respondent-mother and her family were being held to an unrealistic

 standard of perfection in being denied custody of the children. She characterized the

 court proceedings as “a mess[,]” “ridiculous[,]”and “unnecessary[,]” and insisted the

 children should be with their family rather than in foster care. While acknowledging
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 she had disapproved of respondent-mother’s past behavior, the maternal

 grandmother explained that

 her problem—her issue is is that she’s young and some of
 the things that she wanted to do were just not appropriate
 for you having two children at the time. Some things that I
 didn’t agree with. Maybe hanging out a little bit and things
 like that and I’m having to babysit. Things that can be
 fixed. Nothing like she was abusive or—or on drugs or
 anything out of the way like that.

 Because the trial court’s findings fairly characterize the maternal grandmother’s

 testimony, we overrule respondent-mother’s challenge. See In re A.J.T., 374 N.C. at

 508.

¶ 25 Competent evidence also supports the trial court’s findings that it received

 “scant” evidence about the quality of care that the maternal grandmother could

 provide the children. In contesting these findings, respondent-mother asserts the

 trial court previously found the maternal grandmother’s home to be a “perfect”

 placement for Nathan in its initial disposition order entered following the children’s

 adjudication as neglected and dependent juveniles in October 2018. Having reviewed

 the trial court’s 17 October 2018 disposition order we find respondent-mother’s

 argument unpersuasive.

¶ 26 The finding cited by respondent-mother states as follows:

 32. [The maternal grandmother] testified that she called
 [DSS] and reported her daughter because . . . [she] was not
 taking her parenting seriously. . . . [The maternal
 grandmother] believes [respondent-mother] gets the
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 seriousness of it now. In the past [the maternal
 grandmother] has been a placement provider for the
 children. [Nathan] has always been with her and [maternal
 grandmother] can handle [Nathan]’s behavioral problems.
 [The maternal grandmother]’s home is the perfect place for
 [Nathan] to be placed. [The maternal grandmother] wants
 both of the children out of foster care and placed with her
 and/or her mother[, the maternal great-grandmother].

 Fairly construed, this finding merely summarizes the maternal grandmother’s

 testimony and does not reflect the trial court’s own assessment that her residence is

 “perfect” for Nathan. As respondent-mother does not direct our attention to any other

 evidence probative of the quality of care the maternal grandmother could provide the

 children, we reject respondent-mother’s challenge to the trial court’s findings of

 “scant” evidence on the subject. See In re A.J.T., 374 N.C. at 508.

¶ 27 To the extent respondent-mother separately contends there is competent

 evidence to support a finding that the maternal grandmother or maternal great-

 grandmother would be an appropriate placement for the children, we find no merit to

 her contention. “Although the question of the sufficiency of the evidence to support

 the findings may be raised on appeal, our appellate courts are bound by the trial

 courts’ findings of fact where there is some evidence to support those findings, even

 though the evidence might sustain findings to the contrary.” In re Montgomery, 311

 N.C. 101, 110–11 (1984) (citation omitted).

¶ 28 The trial court heard no evidence the maternal great-grandmother was willing

 or able to provide a permanent home for the children. See In re E.F., 375 N.C. at 94.
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 Moreover, although the maternal grandmother testified about her own willingness

 and ability to care for the children, it was the trial court’s role as fact-finder “to pass

 upon the credibility of the witnesses and the weight to be given their testimony and

 the reasonable inferences to be drawn therefrom.” In re A.R.A., 373 N.C. at 196

 (cleaned up). The trial court expressly found that

 It would not be in the best interest of the minor child[ren]
 to be placed with either [the maternal grandmother] or [the
 maternal aunt]. The Court was able to observe them during
 their testimony and hear the tone in which they spoke.
 They both believe that [respondent-mother] is a good
 mother in spite of the facts made known in the termination
 of parental rights proceeding, the fact that [respondent-
 mother] was not at the hearing, and the fact that her
 child[ren do] not have a bond with her. Amongst other
 things, this Court is concerned with their judgment and
 especially their ability to provide a safe and nurturing
 environment for [the children], especially at [their] tender
 age[s].

 Respondent-mother’s exception is overruled.

 C. The best interests determination under N.C.G.S. § 7B-1110(a)

¶ 29 Finally, respondent-mother claims the trial court abused its discretion by

 concluding it was in Nathan’s and Nick’s best interests to terminate her parental

 rights. She contends the trial court failed to follow a statutory preference for placing

 children with relatives over non-relatives when children are removed from the

 parent’s home. Respondent-mother cites N.C.G.S. §§ 7B-900 and 7B-903(a1) under

 Article 9, which governs dispositions in abuse, neglect, and dependency proceedings,
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 as an example of this preference. See In re S.D.C., 373 N.C. at 290 (citing N.C.G.S. §§

 7B-903(a1) and 7B-906.1(e)(2) for the proposition that “[a] trial court is required to

 consider whether a relative placement is available for a juvenile in deciding the issues

 raised in an abuse, neglect, and dependency proceeding”). But cf. id. (“[T]he trial court

 is not expressly directed to consider the availability of a relative placement in the

 course of deciding a termination of parental rights proceeding . . . .”). Respondent-

 mother further notes that custody with a relative or court-approved caretaker was

 designated as the children’s concurrent permanent plan throughout the underlying

 juvenile proceedings. Because “[t]he trial court did not adequately evaluate the

 appropriateness of [the] maternal relatives’ placement” proposed by [the] maternal

 grandmother at the termination hearing, respondent-mother argues the court “failed

 to make [a] reasoned decision” about the children’s best interests.

¶ 30 It is true that Article 9 of the Juvenile Code—which governs dispositions

 entered in ongoing juvenile abuse, neglect, and dependency proceedings—provides

 that a juvenile receiving out-of-home care should be placed with a suitable relative

 when such a placement is available, “unless the court finds that the placement is

 contrary to the best interests of the juvenile.” N.C.G.S. § 7B-903(a1) (2019). However,

 “[a] termination proceeding is separate and distinct from an underlying adjudication

 proceeding” and is governed by the statutes in Article 11. In re A.S.M.R., 375 N.C.

 539, 542 (2020). Article 11’s dispositional statute, N.C.G.S. § 7B-1110, gives no
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

 priority to relative placements, focusing solely upon identifying the best interests of

 the child. See N.C.G.S. § 7B-1110(a)–(b). While the availability of an appropriate

 relative placement may be a “relevant consideration” under N.C.G.S. § 7B-1110(a)(6),

 In re S.D.C., 373 N.C. at 290, it is left to the trial court’s discretion to weigh the

 various competing factors in N.C.G.S. § 7B-1110(a) in arriving at its determination

 of the child’s best interests. See In re J.J.B., 374 N.C. at 795 (explaining that “the

 bond between parent and child is just one of the factors to be considered under

 N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other

 factors” (quoting In re Z.L.W., 372 N.C. at 437)).

¶ 31 The court’s unchallenged findings of fact show DSS had contacted and assessed

 fourteen potential relative placements during the course of the underlying

 proceedings but found none to be acceptable. As discussed above, the trial court

 acknowledged the maternal grandmother’s request that the children be placed with

 her but made findings explaining why such a placement would be inappropriate and

 contrary to the children’s best interests. While the court “d[id] find value in placing a

 child with relatives[,]” the court concluded, based on the evidence before it, that

 freeing Nathan and Nick for adoption would afford them “the greatest opportunity to

 be nurtured, loved, and cared for in a safe and stable environment” and “to reach [the]

 full development of [their] physical, mental, emotional, moral and spiritual faculties.”
 IN RE N.C.E. AND N.D.C.

 2021-NCSC-141

 Opinion of the Court

¶ 32 Because the trial court made sufficient dispositional findings of fact under

 N.C.G.S. § 7B-1110(a)(1)–(5) and provided a reasoned explanation of its weighing of

 the statutory factors, we hold that the trial court did not abuse its discretion by

 concluding that termination of respondent-mother’s parental rights in Nathan and

 Nick was in the children’s best interests. See In re J.J.B., 374 N.C. at 791.

 Accordingly, the trial court’s orders are affirmed.

 AFFIRMED.